Counsel Listed in Signature Page

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| COLLEEN EASTMAN, CHRISTI CRUZ, AND CARMEN MENDEZ<br><br>Plaintiffs Individually and as Members of a Class,<br><br>vs.<br><br>QUEST DIAGNOSTICS INCORPORATED,<br><br>Defendant. | Case No.: 3:15-CV-00415-WHO<br><br>**INITIAL JOINT CASE MANAGEMENT STATEMENT AND PROPOSED ORDER**<br><br>**Date: May 13, 2015**<br>**Time: 2:00 p.m.**<br>**Courtroom 2, 17th Floor**<br>**Judge: Honorable William H. Orrick** |

1   **1.      Jurisdiction and Service:**

2       The Parties do not dispute that this Court has jurisdiction over this matter and that

3   Defendant has been served. Defendant reserves its rights to challenge the supplemental

4   jurisdiction of this court in the event that all federal claims are dismissed.

5   **2.      Facts:**

6       **a.      Plaintiffs' Statement:**

7       This is a class action under the Sherman Act and state law on behalf of health plans and

8   out-patients to recover monopoly overcharges that they have paid directly to Quest Diagnostics

9   Incorporated for routine diagnostic testing.

10      Routine diagnostic testing influences a large majority of medical decisions. Quality

11  testing helps to prevent and control disease, which in turn reduces the overall cost of medical

12  care. Because of how important routine diagnostic testing is to the health of patients, it is

13  imperative to preserve vigorous competition among providers on price and quality.

14      There are two relevant product markets. One is the market for the sale of routine

15  diagnostic testing that is billed directly to health plans or out-patients ("relevant market for

16  plan/out-patient billing"). The plan or the out-patient typically pays the provider of the testing,

17  such as Quest, on a test-by-test basis. Often the direct payments to Quest for a particular test are

18  paid jointly by the plan as well as by out-patient funding of co-payments, co-insurance, or

19  deductibles. Quest has charged monopoly prices in this market to Plaintiffs and other members

20  of the Class since at least 2011. The other relevant market is the market for the sale of routine

21  diagnostic testing that the laboratories bill directly to medical providers ("relevant market for

22  physician billing").

23      The relevant geographic market for each relevant product market is Northern California.

24  Quest has a market share in the relevant market for plan/out-patient billing of at least 70% by

25  revenue. Barriers to entering the market are high, as evidenced by the fact that Quest has been

26  able to price above competitive levels with very little challenge from other competitors.

27

28

INITIAL JOINT CASE MANAGEMENT STATEMENT                                    CASE NO. 3:15-CV-00415-WHO

1    Quest has acquired, and continues to exploit, its monopoly position in the relevant market

2    for plan/out-patient billing through at least three exclusionary practices: (1) it has paid kickbacks

3    to medical providers (in the form of dramatically below-cost billings) in the relevant market for

4    physician billing to induce them to refer all other routine diagnostic testing done in the relevant

5    market for plan/out-patient billing to Quest exclusively regardless of Quest's pricing or its

6    testing quality; (2) it has colluded with two major private health insurers to suppress its

7    competition in the relevant market for plan/out-patient billing; and (3) it has acquired its

8    competitors for plan/out-patient billing in order to eliminate their competition. As a result of

9    these exclusionary practices, since at least 2011, Quest has been able to charge above-

10   competitive prices to members of the Class (as defined below) while providing inferior quality

11   service.

12   As a result of its long-term and persistent pattern of kickbacks, exclusionary contracting

13   with aligned health insurers, and acquisitions to advance its overall scheme to monopolize, Quest

14   has injured, and continues to injure, competition in the relevant market for plan/out-patient

15   billing. The injury to competition is manifest in at least three ways: above-competitive prices,

16   inferior quality of testing, and reduction in choice among providers of routine diagnostic testing.

17          **b.    Defendant's Statement:**

18          This suit recycles antitrust claims that this Court dismissed three separate times in

19   *Rheumatology Diagnostics Laboratory, Inc. v. Aetna, Inc.*, No. 12-cv-05847-WHO ("*RDL*").

20   The principal difference between the two cases is that Plaintiffs here allege that they are

21   *consumers* of QDI's clinical laboratory testing services, whereas *RDL* was filed by *competitors*

22   of QDI. But the substantive antitrust theories at issue here are virtually identical to those

23   presented – and thrice rejected – in *RDL*. Further, Plaintiffs' status as consumers dooms their

24   claims under the California Unfair Practices Act ("UPA") and Unfair Competition Law ("UCL")

25   – the only claims that survived dismissal on the pleadings in *RDL*. The Complaint should be

26   dismissed with prejudice.

27

28

INITIAL JOINT CASE MANAGEMENT STATEMENT                                      CASE NO. 3:15-CV-00415-WHO

3.      **Legal Issues:**

      a.      **Plaintiffs' Statement:**

As set forth more fully in the Complaint and  in Plaintiffs' response to Defendant's motion to dismiss, the legal issues include whether (1) Plaintiffs have plausibly alleged a separate relevant product market for plan/out-patient billing; (2) Plaintiffs have plausibly alleged market power in that market; (3) Plaintiffs have plausibly alleged substantial foreclosure of competition in the plan/out-patient relevant market by Quest Diagnostic Inc.'s three long-term and interrelated exclusionary schemes; (4) Plaintiffs have plausibly alleged antitrust price injury as a consequence of Quest's conduct to obtain and maintain market power in the plan/out-patient relevant market; (5) Plaintiffs have plausibly alleged Article III and statutory standing; (6) Plaintiffs have plausibly alleged a claim under the California Unfair Practices Act; and (7) Plaintiffs have plausibly alleged a claim under the California Unfair Competition Law.

      b.      **Defendants' Statement:**

As set forth more fully in the Motion to Dismiss (Dkt. 20), the legal issues include whether: (1) Plaintiffs have standing to bring their claims; (2) Plaintiffs have remedied any of the legal deficiencies that caused the Court to dismiss the nearly-identical antitrust claims in the *RDL* Complaints; and (3) Plaintiffs have alleged the elements of a claim under the California UCL or UPA.

4.      **Motions:**

Defendant filed a motion to dismiss on March 16, 2015.  (Dkt. 20).  Plaintiffs filed their response on April 15, 2015.  (Dkt. 25).  Defendant filed its reply on April 29, 2015.  (Dkt. 34). A hearing is set for May 13, 2015.  (Dkt. 20).

5.      **Amendment of Pleadings:**

Plaintiffs do not currently intend to amend their Complaint.

6.      **Evidence Preservation:**

The Parties have issued document preservation notices and taken other appropriate steps to preserve evidence.

**7.     Disclosures:**

The Parties have agreed to exchange their Initial Disclosures by May 20, 2015.

**8.     Discovery:**

a)     <u>Exchange of custodian information and meet and confer about discovery matters</u>

The Parties have met and conferred on an ESI Protocol and have agreed on all issues except for one: the time when the Parties will exchange information about their own custodians, and the time when they will meet and confer to discuss some preliminary discovery matters. Plaintiffs propose to do so "promptly," while defendant proposes to do it "promptly after the Court rules on defendant's motion to dismiss." Specifically, Plaintiffs propose the following provisions:

> Section 5
>
> A.  The parties will promptly exchange a list of their own custodians, or general job titles or descriptions of custodians for whom they believe ESI should be preserved, *e.g.*, "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary.  The parties shall provide sufficient information to the other side to identify potentially relevant custodians.
>
> B.  The parties shall also promptly meet and confer on (i) the identity and number of custodians from whom documents will be produced, (ii) the scope of the party's duty to preserve documents, particularly the date of the documents covered by that duty, and (iii) the locations to be searched in order to collect documents for review and production.

Defendant proposes the following provisions:

> Section 5
>
> A.  Promptly after the Court rules on defendant's motion to dismiss, the parties will exchange a list of their own custodians, or general job titles or descriptions of custodians for whom they believe ESI should be preserved,

-5-

e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary.  The parties shall provide sufficient information to the other side to identify potentially relevant custodians.

B. Promptly after the Court rules on defendant's motion to dismiss, the parties shall also meet and confer on (i) the identity and number of custodians from whom documents will be produced, (ii) the scope of the party's duty to preserve documents, particularly the date of the documents covered by that duty, and (iii) the locations to be searched in order to collect documents for review and production.

The Parties agree that they need to exchange information on custodians, and meet and confer on the identity and number of custodians, the scope of the Parties' preservation duty, and the locations to be searched for document collection, review and production. The Parties disagree as to timing. Plaintiffs contend that, because discovery is not stayed pending a decision on defendant's motion to dismiss, there is no reason to delay exchanging custodian information or meeting and conferring on custodians, document preservation, and related issues. Defendant's position is that, given the pendency of the motion to dismiss, there is no reason to allow Plaintiffs to push forward with discovery.  The Parties should wait to begin discovery until after the Court decides whether any of Plaintiffs' case will go forward.  Plaintiffs' suggestion that they are automatically entitled to discovery in this case absent the Court entering a stay is meritless.

The Parties will file an ESI Protocol promptly upon resolution of this issue by the Court.

b) <u>Disclosure of Confidential and Highly Confidential information to "Experts"</u>

The Parties have met and conferred on a Stipulated Protective Order and have agreed on all issues except one. The draft protective order under discussion allows for the disclosure of "Confidential" and "Highly Confidential" discovery materials to experts. "Expert" is a defined term in the draft protective order. Plaintiffs propose the following definition:

2.7    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

Defendant proposes the following definition:

2.7    Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current officer, director or employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an officer, director or  employee of a Party or of a Party's competitor

Plaintiffs contend that Defendant's proposed definition will restrict unduly the pool of potential experts available to Plaintiffs, and may prevent retention of any expert with first-hand knowledge of the alleged relevant product markets in Northern California. Plaintiffs contend further that Defendants' definition is not necessary in this type of case.

Defendant contends that its proposed definition is necessary to prevent the disclosure of competitively sensitive information to its competitors.   Defendant's proposed definition is the same definition used in the Protective Order in the *RDL* case and is taken word-for-word from the District's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets.  There is no reason to deviate from these.

This is particularly the case here, because information produced in this case may include information about past, present, and future  pricing and strategy.  A QDI competitor could use this information to take business away from QDI.  Plaintiffs' speculation that they might not be able to find an expert does not justify authorizing Plaintiffs to disclose QDI's confidential information to competitors.

The Parties will file a Stipulated Protective Order promptly upon resolution of this issue by the Court.

9.     **Class Actions:**

a.     **Plaintiffs' Statement:**

Plaintiffs ("Class Representatives") are representatives of a Class of out-patients or health plans residing in Northern California who have paid Quest directly for routine diagnostic testing on or after January 29, 2011 (the "Class") under plan/out-patient billing arrangements. "Plan/out-patient billing" refers to routine diagnostic testing for which a private health insurance plan, the State of California, or an out-patient (through the payment of a plan deductible, co-insurance or co-payment or a testing fee as an uninsured) has paid a fee directly to Quest. Routine diagnostic testing provides chemical analysis of bodily fluids, typically in the areas of hematology, blood chemistry, urine chemistry, endocrinology, and microbiology. Routine diagnostic testing does not include what is known as specialized diagnostic testing which is tailored to assess certain specific conditions, such as cancer or allergy. Specialized testing is performed less frequently and requires more sophisticated and specialized knowledge or equipment than routine diagnostic testing. "Health plan" includes, without limitation, private insurance plans, health care plans, the State of California to the extent it pays for Quest testing on behalf of its residents in Northern California, or other third-party payors that defray all or part of the cost of Quest testing for others. The Class does not include:

(a)     Blue Shield of California and its affiliates, and any officers, directors or employees of Blue Shield of California or its affiliates;

(b)     Aetna, Inc. and its affiliates, and any officers, directors or employees of Aetna, Inc. or its affiliates;

(c)     Quest and its affiliates, and any officers, directors or employees of Quest or its affiliates; or

(d)     The presiding Judge in this action, and personnel associated with his Chambers.

*Rule 23(a) Prerequisites*

Prosecution of the claims of the Class as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met:

1  (a)  The number of persons in the Class is so numerous that joinder of all members of
2  the Class is impracticable.

3  (b)  There are numerous questions of law and fact arising from the pattern of
4  Defendant's alleged anti-competitive conduct which are common to the members of the Class.

5  (c)  The claims of the Class Representatives are typical of the claims of the members
6  of the Class and fairly encompass the claims of the members of the Class.

7  (d)  The Class Representatives and its counsel will fairly and adequately protect the
8  interests of the members of the Class.

9  *Rule 23(b)(3) Prerequisites*

10  In addition, the prosecution of the claims of the Class as a class action pursuant to Rule
11  23(b)(3) is appropriate because:

12  (a)  Questions of law or fact common to the members of the Class predominate over
13  any questions affecting only its individual members; and

14  (b)  A class action is superior to other methods for the fair and efficient resolution of
15  the controversy.

16  *Rule 23(b)(2) Prerequisites*

17  In addition, the prosecution of the claims of the Class as a class action pursuant to Rule
18  23(b)(2) is appropriate because Defendant has acted, or refused to act, on grounds generally
19  applicable to the Class, thereby making appropriate final injunctive relief, or corresponding
20  declaratory relief, for the Class as a whole.

21  **b.  Defendant's Statement:**

22  Defendant denies that class treatment is appropriate and reserves all of its rights to object
23  to class certification.

24  **10.  Related Cases:**

25  The Court has ordered that this case is related to the following action: *Rheumatology*
26  *Diagnostics Laboratory, Inc. v. Aetna, Inc.*, No. 12-cv-5847-WHO.

27

28

-9-

**11.    Relief:**

      **a.    Plaintiffs' Statement:**

Plaintiffs seek overcharge damages measured as the difference between the monies paid for Quest routine diagnostic testing billed directly in Northern California to health plans and their out-patients in the proposed Class from January 29, 2011, through trial based on estimates of the competitive pricing that would have prevailed "but for" the alleged monopolization. Plaintiffs also seek appropriate injunctive relief to assist in opening the relevant plan/out-patient market to competition.

      **b.    Defendant's Statement:**

Defendant denies that Plaintiffs are entitled to any relief.

**12.    Settlement and ADR:**

The Parties filed their certifications and a Notice of Need for ADR Phone Conference on or about April 22, 2015.  An ADR Phone Conference took place on May 1, 2015, during which the parties expressed their agreement that alternative dispute resolution is not appropriate at this time.  Another ADR Phone Conference is scheduled for July 29, 2015 at 10:00 a.m.

**13.    Consent to Magistrate Judge for All Purposes:**

The Parties do not consent to a magistrate judge for all purposes.

**14.    Other References:**

The Parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.    Narrowing of Issues:**

The Parties do not believe that any narrowing of the issues is possible at this time.

**16.    Expedited Trial Procedure:**

The Parties do not believe that an expedited trial procedure is appropriate.

17.    **Scheduling and Discovery:**

a.    **Scheduling**

The Parties have conferred but have been unable to agree on a schedule. The respective proposals of the Parties are set forth below.

1.    **Plaintiffs' Proposal:**

| Event | Date |
|-------|------|
| Deadline for Parties to substantially complete 50% of their respective document productions | 7/22/15 |
| Deadline for Parties to substantially complete the remainder of their respective document productions | 8/24/15 |
| Plaintiffs' motion and expert report[s] on class certification due | 10/15/15 |
| Deadline to complete deposition(s) of Plaintiffs' expert(s) on class certification | 11/16/15 |
| Defendant's opposition to class certification motion and expert report[s] on class certification due | 12/1/15 |
| Deadline to complete deposition(s) of Defendant's expert report(s) on class certification | 12/31/15 |
| Plaintiffs' reply on class certification motion due | 1/15/16 |
| Proposed hearing date for class certification motion | 1/22/16 |
| Deadline to complete fact discovery | 5/2/16 |
| Deadline for each Party to submit expert reports on the merits of issues as to which it has the burden of proof | 5/9/16 |

| Event | Date |
|---|---|
| Rebuttal expert reports on the merits | 6/9/16 |
| Deadline to complete depositions of merits experts | 7/8/16 |
| Daubert motions and summary judgment motions due | 7/22/16 |
| Deadline for Parties to exchange proposed stipulated facts and issues | 10/3/16 |
| Deadline for Parties to meet and confer on proposed stipulated facts and issues | 10/11/16 |
| Deadline for Parties to submit agreed-upon stipulated facts and issues | 10/21/16[1] |
| Hearing on Daubert and summary judgment motions | 10/21/16 |
| Motions in limine due | 10/31/16 |
| Pretrial disclosures due | 11/5/16[2] |
| Deadline to serve proposed jury instructions | 11/5/16 |

[1] If a party believes the other party has not met and conferred in good faith on stipulated facts and issues, it shall raise the issue with the Court on this date.

[2] Plaintiffs and Defendant shall serve: (1) the original or a copy of each exhibit they expect to offer at trial; (2) deposition designations they expect to use at trial; (3) a list identifying each expert and fact witness they "will call" and "may call" at trial with a brief statement of his or her expected testimony; and  (4) a list identifying each expert and fact witness they "may call"  at trial with a brief statement of his or her expected testimony. The parties are not required to disclose witnesses called solely for the purpose of impeachment. Each side shall disclose via electronic mail to the lead counsel of the other side the identity and expected order of trial witnesses that side will call as a witness, in person or by video deposition at least 48 hours before the commencement of the trial day on which the witness will testify.

INITIAL JOINT CASE MANAGEMENT STATEMENT                    CASE NO. 3:15-CV-00415-WHO

| Event | Date |
|---|---|
| Deadline for Parties to exchange demonstrative and illustrative exhibits | 11/5/16 |
| Deadline to serve objections to demonstrative and illustrative exhibits | 11/12/16 |
| Final pretrial conference statement and proposed orders due | 11/12/16 |
| Deadline to serve objections to deposition designations, objections to proposed exhibits, deposition counter-designations, proposed jury verdict forms, and proposed voir dire | 11/19/16 |
| Final pretrial conference | 11/19/16 |
| Proposed trial date | 12/1/16 |

### 2.   Defendant's Proposal

**Close of Fact Discovery:**          Five months after the close of the pleadings.

**Class Certification Hearing:**      Two months after close of fact discovery.

**Close of Expert Discovery:**        Two months after class certification ruling.

**SJ Hearing:**                       Three months prior to trial.

**Trial:**                            Fall 2016

### b.   Interrogatories

Each side shall propound a maximum of 30 interrogatories, including all discrete subparts, to the other side.

### c.   Requests for Admission

Requests for admission shall be governed by Federal Rules of Civil Procedure 36.

-13-

1

        **d.**        **Depositions**

2

               **1.**        **Plaintiffs' Proposal:**

3

     For fact depositions, each side shall have 125 deposition hours in the absence of good

4

cause shown to the Court.

5

               **2.**        **Defendant's Proposal:**

6

      Each side shall take up to eight fact depositions. Depositions of QDI witnesses deposed

7

in the *RDL* action shall be limited to four hours.

8

    **18.**     **Trial:**

9

     The Parties request a 15-day trial (7.5 days per side). Plaintiffs have made a jury demand

10

in their Complaint.

11

    **19.**     **Disclosure of Non-party Interested Entities or Persons:**

12

     The Parties filed their Disclosures of Non-Party Interested Entities or Persons on or about

13

April 22, 2015.

14

    **20.**     **Professional Conduct:**

15

     The Parties certify that they have reviewed the Northern District's Guidelines for

16

Professional Conduct.

17

18

19

20

21

Dated: May 6, 2015

22

                            By: /s/ J. Ross Wallin

23

                              GRAIS & ELLSWORTH LLP
                              J. Ross Wallin (admitted *pro hac vice*)

24

                              rwallin@graisellsworth.com
                              Silvia Ostrower (admitted *pro hac vice*)

25

                              sostrower@graisellsworth.com
                              1211 Avenue of Americas

26

                              New York, NY 10036
                              Telephone: (212) 755-0100

27

                              Telecopy: (212) 755-0052

28

1

By: /s/ R. Stephen Berry

2

3          R. Stephen Berry (admitted *pro hac vice*)
           sberry@berrylawpllc.com

4          BERRY LAW PLLC
           1717 Pennsylvania Avenue, N.W., Suite 450

5          Washington, D.C. 20006
           Telephone: (202) 296-3020

6          Facsimile: (202) 296-3038

7     By: /s/ Colleen Duffy-Smith

8          MORGAN DUFFY-SMITH &
           TIDALGO LLP

9          Colleen Duffy-Smith (CA Bar No. 161163)
           cduffysmith@mdstlaw.com

10         1960 The Alameda, Suite 220
           San Jose, CA 95126

11         Telephone: (408) 244-4570

12         *Attorneys for Plaintiffs*

13

14    By: /s/ Ryan M. Sandrock
              Ryan M. Sandrock

15         Ryan M. Sandrock (SBN 251781)

16         rsandrock@sidley.com
           SIDLEY AUSTIN LLP

17         555 California Street, Suite 2000
           San Francisco, California  94104

18         Telephone:  (415) 772-1200
           Facsimile:  (415) 772-7400

19         Telephone: (415) 772-1200

20         Richard D. Raskin (admitted *pro hac vice*)

21         rraskin@sidley.com
           Allison W. Reimann (admitted *pro hac vice*)

22         areimann@sidley.com
           SIDLEY AUSTIN LLP

23         One South Dearborn Street

24         Chicago, Illinois  60603
           Telephone:  (312) 853-7000

25         Facsimile:  (312) 853-7036

26         *Attorneys for Quest Diagnostics*
           *Incorporated*

27

28

INITIAL JOINT CASE MANAGEMENT STATEMENT                    CASE NO. 3:15-CV-00415-WHO